UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RAHSAAN BUTLER,

                        Petitioner,              No. 02-CV-5733 (KMK) (KNF)

   -v-                                        <u>OPINION AND ORDER</u>

BRIAN FISCHER,

                        Respondent.

---

<u>Appearances</u>:

Rahsaan Butler
Otisville, N.Y.
*Pro Se* Petitioner

Beth J. Thomas, Esq.
New York State Office of the Attorney General
New York, N.Y.
Counsel for Respondent

KENNETH M. KARAS, District Judge:

       Rahsaan Butler ("Petitioner") moves this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is being held in state custody in violation of his federal constitutional rights. On September 16, 1998, Justice James Yates of the New York Supreme Court, New York County, sentenced Petitioner to imprisonment, with fourteen years being the longest of three concurrent terms, from which Petitioner seeks relief here. The sentence followed a jury trial in which Petitioner was found guilty of Assault in the First Degree, Criminal Possession of a Weapon in the Second Degree, and Criminal Possession of a Weapon in the Third Degree, and not guilty of Attempted Murder.

The Petition asserts two grounds for relief. First, it challenges Justice Yates' determination that juror Ron Dailey, a medical doctor, was capable of fulfilling his duties as a juror competently and impartially. Second, it challenges Justice Yates' determinations on two occasions that the prosecution's use of peremptory challenges had not triggered an obligation under *Batson v. Kentucky*, 476 U.S. 79 (1986), for the prosecution to offer a race-neutral explanation of its strikes. Both claims were properly preserved and exhausted in the New York courts.[1]

This case was initially assigned to Judge Laura Taylor Swain, who referred it to Magistrate Judge Kevin N. Fox for report and recommendation. The case was subsequently reassigned to this Court, and Magistrate Judge Fox issued a Report and Recommendation ("R&R"), concluding that the Petition should be denied in its entirety. Petitioner filed timely Objections ("Obj."), urging the Court to reach contrary determinations on each of the two grounds for relief stated by the Petition or, in the alternative, to issue a Certificate of Appealability on them. For the reasons stated in this Order, Petitioner's claims for relief are each DENIED and Petitioner's request for a Certificate of Appealability is DENIED as to the biased juror claim but GRANTED as to the *Batson* claim.

---

[1] Petitioner, represented by appointed appellate counsel, appealed his conviction to the First Department Appellate Division, raising the same two grounds as stated in his Petition to this Court. *People v. Butler*, 722 N.Y.S.2d 510 (App. Div. 2001) [hereinafter *Butler*]. On March 27, 2001, the Appellate Division entered an order denying Petitioner's appeal on each of these grounds. *See id.* The New York Court of Appeals denied Petitioner's subsequent request for leave to appeal from the Appellate Division's determination. 756 N.E.2d 84 (N.Y. 2001).

I.  Discussion

A.  Standard of Review

Ordinarily, this Court reviews a magistrate judge's report and recommendation only to "satisfy itself that there is no clear error on the face of the record." *Reyes v. Mantello*, No. 00-CV-8936, 2003 WL 76997, at *1 (S.D.N.Y. Jan. 9, 2003) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)).  The Court reviews on a de novo basis, however, those aspects of a report and recommendation to which a party raised specific objections.  *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions . . . to which objection is made."); Fed. R. Civ. P. 72(b)(3).

Ultimately, Petitioner is entitled to habeas corpus relief only if he can show that "the state court 'unreasonably' applied law as established by the Supreme Court in ruling on petitioner's claim, or made a decision that was 'contrary to it.'" *Cousin v. Bennett*, 511 F.3d 334, 337 (2d Cir. 2008) (quoting 28 U.S.C. § 2254(d)(1)).  "While the precise method for distinguishing objectively unreasonable decisions from merely erroneous ones is somewhat unclear, it is well-established in this Circuit that the objectively unreasonable standard of § 2254(d)(1) means that petitioner must identify some increment of incorrectness beyond error in order to obtain *habeas* relief." *Sorto v. Herbert*, 497 F.3d 163, 169 (2d Cir. 2007) (internal quotation marks omitted). The state court's determinations of factual issues are presumed correct, and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see also Hoi Man Yung v. Walker*, 468 F.3d 169, 176 (2d Cir. 2006).

B.  Claim for Failure to Excuse Juror Ron Dailey

The Fourteenth Amendment entitles criminal defendants to "a fair trial by a panel of

impartial, 'indifferent' jurors." *See Irvin v. Dowd*, 366 U.S. 717, 722 (1961); *see also Gordon v. Cunningham*, No. 05-CV-10701, 2006 WL 3549122, at *4 (S.D.N.Y. Dec. 8. 2006) ("'[A]n impartial trier of fact – a jury capable and willing to decide the case solely on the evidence before it' is a 'touchstone of a fair trial.'" (quoting *McDonough Power Equip. v. Greenwood*, 464 U.S. 548 (1984))). Invoking the Fourteenth Amendment, Petitioner challenges Justice Yates' determination that juror Ron Dailey, a medical doctor, was capable of fulfilling his duties as a juror competently and impartially.[2] On appeal from the trial court, the Appellate Division concluded that Dailey "never expressed any doubt about his ability to render an impartial verdict" and that "the totality of his responses established that, as a result of rearranging his work schedule, his financial pressures would not interfere with his ability to serve as a juror." *Butler*, 722 N.Y.S.2d at 510.

In evaluating a habeas petition, the Court gives "considerable deference to the determination of the trial court that a juror is impartial." *Summers v. Senkowski*, No. 99-CV-9092, 2001 WL 204205, at *4 (S.D.N.Y. Feb. 28, 2001) (citing *Patton v. Yount*, 467 U.S. 1025, 1037 n.12 (1984)); *see also Knapp v. Leonardo*, 46 F.3d 170, 176 (2d Cir. 1995) ("[T]he Supreme Court has made it clear that the trial court's finding of impartiality may be overturned only for manifest error." (internal quotation marks omitted)). As noted above, the habeas statute

---

[2] The Petition states that "the juror, a physician, belatedly informed the court that he treated many AIDS patients, felt financial and work pressure from the substantial loss of time and money caused by his jury service, and could not unequivocally assure the court that he would be able to set aside these preoccupations." (Petition Stmt. on 9-D ¶ 1.) Magistrate Judge Fox concluded that Petitioner had failed to rebut the presumption attaching to Justice Yates' factual determination that excusing Dailey for cause was unnecessary. (R&R 7.) Petitioner objected stating the specific grounds that "the juror, being a doctor, amounted to an [biased] juror based upon his medical experience," and that "a juror who's medical experience would prejudice the petitioner should be discharged. [sic]" (Obj. ¶¶ 4, 5.)

4

instructs the Court to presume "the state court's factual findings to be correct and may overturn those findings only if the petitioner offers 'clear and convincing evidence' of their incorrectness." *Hoi Man Yung*, 468 F.3d at 176 (quoting 28 U.S.C. § 2254(e)(1)); *see also Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 813 (2d Cir. 2000) ("[T]he state trial court is entitled to a presumption of correctness with respect to its conclusion that the jury was impartial."). Courts may also resolve ambiguities in the record in favor of deference to the trial court's findings because the trial court has had an opportunity to directly observe and examine the juror. *See Wainwright* v. Witt, 469 U.S. 412, 434-35 (1985).

    Petitioner's specific objection to the R&R raises a concern about prejudice caused by medical experience (and thus the Court reviews the issue de novo as to the Magistrate Judge's conclusion). "The test of juror impartiality is whether 'the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.'" *Summers*, 2001 WL 204205, at *4 (quoting *Irvin*, 366 U.S. at 723). Dailey stated during voir dire that he would fully credit a treating physician's testimony. Although he expressed some skepticism about medical expert witnesses, Dailey clearly indicated that he would evaluate the credibility of each witness on an individual basis, including where the witness was a medical expert. (Venire Transcript ("V. Tr.") 96-97 ("Every witness is different. You can always find different experts to say different things. Depends upon the credibility of what the guy has to say.").) Dailey unambiguously answered "Yes" to Justice Yates' question as to whether he could take an oath to be impartial and follow the law. (*Id.* 96.) Given this record, Plaintiff has not shown that the Appellate Division unreasonably applied the law in finding that Justice Yates' determination not to excuse Dailey for cause on the basis of his medical experience did not violate Plaintiff's right

to an impartial jury; nor has Plaintiff shown that Justice Yates' finding of Dailey's impartiality was manifest error.

As to other grounds alleged in the Petition to have caused Dailey to be biased, the Court reviews the R&R for clear error. Finding none, the Court adopts Magistrate Judge Fox's conclusion that "Butler has not presented any evidence to rebut the presumption of correctness that attaches to this factual determination or to establish that the determination not to excuse juror [Dailey] was an unreasonable one." (R&R 7.)[3] Petitioner has therefore failed to show that the state court unreasonably applied any law as established by the Supreme Court in ruling on Petitioner's claim or made a decision that was contrary to it. *See* 28 U.S.C. § 2254(d)(1); *Cousin*, 511 F.3d at 337.

### C. Claim for Failure to Recognize Prima Facie *Batson* Issue

The Supreme Court has held that the Equal Protection Clause of the Constitution prohibits prosecutors from exercising peremptory challenges against prospective jurors "solely on the basis of race." *Cousin*, 511 F.3d at 337 (quoting *Batson*, 476 U.S. at 89). Invoking this protection under the Fourteenth Amendment, Petitioner challenges Justice Yates' determination that a prima facie case had not been established at the junctures in jury selection identified by defense counsel and argues that, therefore, the *Batson* requirement that the prosecution advance a race-neutral reason for its strikes should have been triggered.[4]

---

[3] The Court would reach the same conclusion on this point if it was reviewing the issue de novo relative to the R&R.

[4] "Where the highest state court to review the decision summarily affirms the Trial Court, the Federal Court must look to the Trial Court's treatment of peremptory strikes." *Rosario v. Burge*, 542 F. Supp. 2d 328, 340 n.6 (S.D.N.Y. 2008) (citing *Yist v. Nunnemaker*, 501 U.S. 797, 803 (1991); *Harris v. Kuhlmann*, 346 F.3d 330, 345 (2d Cir. 2003)).

1. Background

Jury selection in Plaintiff's trial began on July 28, 1998. Justice Yates employed a "jury box" system for jury selection. *See Sorto*, 497 F.3d at 167 (describing box method). First, Justice Yates invited jurors to speak with him and counsel in an on-the-record robing room proceeding if they knew anyone connected with the case or had a problem with service that would merit being excused. (V. Tr. 21.) Then, under the box method, sixteen jurors were randomly called from the venire and interviewed by the judge, prosecutor, and defense attorney. The lawyers were given an opportunity to challenge for cause and, following the judge's ruling on the cause challenges, the lawyers had an opportunity to exercise one or more of the fifteen peremptory challenges afforded to each side. A new set of jurors was then brought into the box, and the process was repeated until a full jury was empaneled.

In the first round of jury selection, sixteen prospective jurors were brought into the box. Following interviews, two of the sixteen were excused for cause, five were struck peremptorily by the prosecution, five were struck peremptorily by the defense, and four were empaneled.

In the second round, another sixteen prospective jurors were brought into the box. Following interviews, four were struck peremptorily by the prosecution, eight were struck peremptorily by the defense, and another four were empaneled. Thus, at the conclusion of the second round, eight total jurors had been empaneled. The prosecution retained six peremptory challenges and the defense retained three.

In the third round, Judge Yates brought only twelve prospective jurors into the box (a number that exhausted the venire). Following interviews, Judge Yates invited peremptory challenges to the prospective jurors by subgroups. First, he asked for challenges to jurors one

7

through four identified as: (1) Brandon Fradd; (2) Donald Kelly; (3) David Wasserman; and (4) Glenn Bethune. The prosecution struck Kelly (who the transcript indicates was a white or hispanic male) and Bethune (who the transcript indicates was an African-American male). At that time, Petitioner's attorney raised the first of two *Batson* objections:

> MR. BARTLEY: At this time I will raise an objection. People versus Batson for the DA to specify. There has been a sparcity of African Americans in the pool of seventy-five people. The panel before this, I don't think had any African Americans. The DA has now struck certain people of color and there is no objective reasons [sic] why she should do that. And I think she needs to put forth a race neutral reason as to why she is excusing people of color.
>
> THE COURT: From what I can see there have been three African Americans who have heretofore come for review. Two were challenged by the People and one was sworn in as a juror. I don't know if that establishes a pattern to justify an inquiry at this point.
>
> MR. BARTLEY: I think it does, Your Honor. I am requesting the Court have the DA put forth race neutral reasons for excluding black people from the jury.

(V. Tr. 305-06.)

Justice Yates denied the application and the defense used one of its three remaining peremptory challenges to strike juror Fradd. The total number of empaneled jurors then rested at nine.

Next, Justice Yates asked for challenges to jurors five through seven, identified as: (5) Francis Chung; (6) Alvin Hicks; and (7) Johanny Tany. The prosecution peremptorily struck Chung and Tany, bringing the total number of empaneled jurors to ten.

Justice Yates then excused juror number eight for cause and invited challenges to jurors nine and ten, identified as: (9) Sanday Racz and (10) Else Coleman. The prosecutor raised a

cause challenge against Coleman (who the transcript indicates was African-American), and

Justice Yates denied it as follows:

> MS. STEIN: I have cause challenge for Mr. Coleman. In answer to [Justice Yates'] question about whether or not he had any friends, relatives in law enforcement he seemed to go off on a tangent, very confused, lost track of your question. He was talking about people being murdered. Assistant Attorney General for New York State. And seems to me that he might have a problem with following. In fact I will add to that. Yesterday we spoke to him, seems that some questions, fine. No problem. There was another point at which he seemed to not understand what you were saying.[5] In the back in the jury room yesterday.
>
> THE COURT: He is an elderly gentleman. I think it was more a hearing problem than anything. When he did hear a question on frequent occasion he answered quite rationally.
>
> THE COURT: I think I understand your concern but I am denying the cause challenge.

(*Id*. 308-09.) The prosecutor then exercised a peremptory challenge against Coleman.

Petitioner's attorney then raised his second *Batson* objection:

> MR. BARTLEY: I raise the Batson issue again. We have another black person from Harlem who the DA has challenged and given us no sincere reason why she is challenging him. No reason. And this is the last of the entire jury panel of all seventy-five people. There has been again less than six or so black people and from Harlem and she is just bumping people on the basis of race. I would ask you to deny this challenge peremptorily.

(*Id*. 309.) Justice Yates observed that the last sworn juror (presumably, Hicks) was African-American.[6] (*Id*. 310.) He further observed that of the five African-American prospective jurors

---

[5] In the robing-room proceeding, Coleman had described his prior jury service in a 1995 drug trial. (V. Tr. 102-03.)

[6] Defense counsel's reference to "six or so black people" appears to be including juror Donald Kelly, who identified himself as a resident of Harlem. Justice Yates and both counsel

9

(including Coleman), two had been sworn in as jurors and three had been peremptorily struck by the prosecutor (including Coleman). He concluded: "I don't know how you make out a pattern. So I will deny the application." (V. Tr. 311.)

Juror number nine, Racz, was empaneled. Juror number eleven, Zack Cohen, was empaneled. Juror number twelve, Robert Easton, was peremptorily struck by defense counsel. The jury pool having been exhausted, the prosecution and defense agreed on four alternates from among the peremptorily-challenged prospective jurors in the final box: Chung, Kelly, Fradd, and Easton. The Court thereupon set the trial to begin on Monday, August 3, 1998, at which Defendant was ultimately convicted as described above.

### 2. *Batson* Standard

Petitioner claims that "defense counsel established a prima facie case of discrimination," and that the trial judge failed to make the inquiry of the prosecution for a race-neutral explanation of its strikes as required by *Batson v. Kentucky*, 476 U.S. 79 (1986). (Petition Stmt. on 9-D ¶ 2.)

In *Batson*, the Supreme Court articulated a process and standards by which a defendant could challenge potentially-purposeful racial discrimination in a prosecutor's selection of petit jurors during venire. *See Richardson v. Greene*, 497 F.3d 212, 214 (2d Cir. 2007) ("[E]very person has a right to a trial before a jury impaneled without discrimination by race."). *Batson* commands a low threshold that a defendant must reach in order to make a prima facie case of

---

clarified the record that Kelly was either Hispanic or White. He was also ultimately seated by consensus as an alternate juror. Because Kelly's race is unclear, and alternatively because the class of "Harlem residents" that defense counsel sought to define is in any event not itself cognizable under *Batson*, the Court deems the Petition not to seek to implicate the initial peremptory strike of Kelly.

10

such purposeful racial discrimination. *See Overton v. Newton*, 295 F.3d 270, 276 (2d Cir. 2002) ("[I]n order to establish a *prima facie* case of discrimination, a defendant must show facts and circumstances that raise an inference that the prosecutor used the peremptory challenge to exclude potential jurors from the petit jury on account of their race."). Where met, "the burden shifts to the State to come forward with a neutral explanation for challenging black jurors." *Batson*, 476 U.S. at 97; *see also McKinney v. Artuz*, 326 F.3d 87, 97-98 (2d Cir. 2003) (synopsizing *Batson* burden-shifting framework). Although the first-stage threshold is low, it is nevertheless a real hurdle: "While litigants must now explain their motivations for certain strikes, courts must still be mindful of 'each side's historical prerogative to make a peremptory strike or challenge . . . without a reason stated' if a *prima facie* case of discrimination has not been established." *Sorto*, 497 F.3d at 170 (quoting *Miller-El v. Dretke*, 545 U.S. 231 (2005)). The Court in *Batson* emphasized that "trial judges, experienced in supervising *voir dire*, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges create[] a prima facie case of discrimination against black jurors." 476 U.S. at 97. In other words, the trial judge must take account of "all relevant circumstances" in determining whether a prima facie showing has been made. *Harris*, 346 F.3d at 345.

In Petitioner's trial proceeding, Justice Yates held (and the Appellate Division subsequently affirmed) that (as the defendant) Petitioner had failed to make the prima facie showing.[7] The narrow issue the Court reviews is whether such a holding was "an unreasonable

---

[7] Justice Yates used the term "pattern" when he apparently meant prima facie case. In the *Batson* context, these terms are not the same, as a "pattern" of strikes is one of several factors which may be considered by a trial court in determining whether a *prima facie* case has been made. *See Overton*, 295 F.3d at 277-78 (stating that trial court may consider "all relevant circumstances" including "a 'pattern' of strikes" in determining whether a prima facie case has

11

application of clearly established Federal law, as determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d)(1). Here, the question is whether the state courts unreasonably applied *Batson*. *See Cousin*, 511 F.3d at 337 (stating unreasonable application standard and that existence of a prima facie case is mixed question of fact and law); *Sorto*, 497 F.3d at 169 ("Because the Appellate Division rendered a decision on the merits, our review of the *prima facie* rulings is governed by AEDPA."). The Court deems Petitioner's Objections to trigger de novo review of the R&R's treatment of his entire *Batson* claim.

### 3. Objection to Prosecution's Challenge of Juror Bethune

The *only* fact asserted by Petitioner to fashion a prima facie claim at the time of the Bethune challenge was the disparity between the minority challenge rate and the minority venire rate. Although "the exclusion of [even] a single juror could, in circumstances tending to show racial motivation, be sufficient," a trial court must determine whether a prima facie case has been made by considering "'all relevant circumstances.'" *Cousin*, 511 F.3d at 338 (quoting *Batson*,

---

been made (quoting *Batson*, 476 U.S. at 96-97). Nonetheless, Justice Yates appeared to use the term "pattern" instead of prima facie case because he considered many factors typically addressed in evaluating a prima facie case, including, among others, the racial composition of the venire, the number of peremptory strikes exercised against African-American prospective jurors, whether any African-American prospective juror has been empaneled, and where the potential jurors resided. Thus, Justice Yates' apparently-mistaken use of the term "pattern" does not show that he acted contrary to clearly-established law. *See Cousin*, 511 F.3d at 339 (holding that even though trial judge apparently confused the terms "pattern" and "prima facie case," habeas relief was not warranted). Furthermore, the Appellate Division, in denying Petitioner's appeal, clearly applied *Batson* and found that Petitioner had not made a prima facie showing of discrimination. *See Butler*, 722 N.Y.S.2d at 511. This holding trumps Justice Yates' ruling for purposes of this habeas petition. *See Cousin*, 511 F.3d at 339 (holding that the "decision of the Appellate Division, which superseded the trial judge's ruling, was not contrary to, nor did it involve an unreasonable application of, clearly established law," as the "Appellate Division did not repeat the trial judge's erroneous view that a 'pattern' of discriminatory strikes was a prerequisite to making a *prima facie* showing of racial motivation").

476 U.S. at 96-97). The burden belongs to Petitioner to ensure the record contains whatever evidence of circumstances – "such as the composition of the venire, the adversary's use of peremptory challenges, the race of the potential jurors stricken, and a clear indication as to which strikes were challenged when and on what ground, and which strikes were cited to the trial court as evidence of a discriminatory intent" – as necessary to show unreasonable application of the law. *Sorto*, 497 F.3d at 171-72 (internal footnote omitted).

There are inadequate facts here that "give rise to a sufficiently strong inference of racial motivation to make a *prima facie* showing." *Cousin*, 511 F.3d at 338. During the voir dire, Bethune stated that he worked as a cab driver and lived in Washington Heights at 160th Street and Broadway (the location of the charged crime was 137th Street and Lenox Avenue). (V. Tr. 255.) He also said he had suffered an unpleasant experience with police officers. (*Id*. 273-74.) In the robing room screening stage, Bethune had stated that he believed that a friend of his had not received a fair trial for manslaughter and, when asked if he could be an impartial juror in this case, he said that his feelings for the police precinct involved in the case were "mixed" and that his father had worked at that precinct for nine years.[8] (*Id*. 66.) After further questioning from the trial court, however, he did indicate that he could be a fair juror.

While the Court offers no speculation about what part of this information might have caused the prosecutor to challenge Bethune, there was sufficient basis from Bethune's statements to undercut Petitioner's claim that he had made a prima facie case under *Batson*. *Cf. Cousin*, 511

---

[8] During this exchange, the transcript identified Bethune as "Glenn Banoon" (Tr. 65), but it is undisputed by the Parties that this portion of the transcript refers to Bethune. (Br. for Def.-Appellant at 42-43 n.16 (Ex. A to Decl. in Opp. to Pet. for a Writ of Habeas Corpus, dated Dec. 30, 2002).)

F.3d at 338 ("[I]f a prosecutor who possessed no information about prospective jurors other than what was visible from their appearance, proceeded to challenge the only African-American juror in a venire of sixty . . . the single challenge might well be sufficient to sustain a *prima facie* showing of a *Batson* violation."). The record contains no information whatsoever about the two African-American prospective jurors (one of whom had been seated, and the other challenged) from the first two boxes. As Chief Judge Jacobs explained in *Sorto*, it is not the role of the habeas court to speculate about circumstances outside the record that hypothetically could have supported a prima facie case. *See Sorto*, 497 F.3d at 171 ("When, as here, a *Batson prima facie* case depends on a pattern of strikes, a petitioner cannot establish that the state court unreasonably concluded that the pattern was not sufficiently suspicious unless the petitioner can adduce a record of the baseline factual circumstances attending the *Batson* challenge."). Because Petitioner cannot demonstrate that the state courts unreasonably applied the law in finding that Petitioner had not made a prima facie showing that the prosecutor was racially-motivated in striking Bethune, habeas corpus relief cannot be granted on his claim. *See Cousin*, 511 F.3d at 339.

### 4. Objection to Prosecution's Challenge of Juror Coleman

Applying the same test, the Court concludes that the state courts did not unreasonably apply *Batson* by failing to find a prima facie case at the time of defense counsel's objection to the prosecutor's peremptory challenge of prospective juror Coleman. Including Coleman, the prosecution had peremptorily challenged three of the five African-American prospective jurors. Coleman was the 42nd potential juror, the 39th to be subject to peremptory challenge (because three jurors had been excused for cause), and the 14th to be peremptorily challenged by the

prosecution. He was the fifth African-American to be subject to a peremptory challenge and the third to actually be challenged. That yields a venire rate of approximately thirteen percent and a challenge rate of approximately twenty-one percent. Thus, the challenge rate for African-Americans was approximately 1.6 times greater than the venire rate (at the time of Petitioner's second *Batson* objection).[9]

  Statistical evidence is properly an important consideration for the Court. *See United States v. Alvarado*, 923 F.2d 253, 255 (2d Cir. 1991) (noting that "statistical disparities are to be examined"). It is appropriately viewed in context, however, and the limitation of the statistical evidence presented by Petitioner is that the very small number of African-Americans in the jury pool substantially dilutes any inference that can be drawn from the statistics. S*ee Tankleff v. Senkowski*, 135 F.3d 235, 249 (2d Cir. 1998) ("In considering whether a defendant has made out a prima facie case . . . , we believe that courts should consider how many members of the cognizable racial group are in the venire panel from which the petit jury is chosen, the pattern of strikes against racial group jurors in the particular venire, the prosecutor's statements and questions during selection, as well as any other relevant circumstances."). Justice Yates himself noted (at the time of the first *Batson* objection, to the peremptory strike of Bethune) that the small number of African-American prospective jurors in the venire was "disturbing" to him. (V. Tr. 306). Indeed, as Magistrate Judge Fox observed of the statistical consequences, the statistical disparity would entirely vanish if the prosecution had struck just one fewer African-American prospective juror peremptorily. (R&R 10.)

---

[9] Magistrate Judge Fox found that the ratio was 1.8, but he apparently did not consider that Coleman was only the 39th potential juror to be subject to peremptory challenge. Instead, he calculated the ratio as if Coleman was the 41st juror to be subject to peremptory challenge.

"'[T]he prosecutor's questions and statements during *voir dire* examination and in exercising his challenges may support or refute an inference of discriminatory purpose.'" *Overton*, 295 F.3d at 278 (quoting *Batson*, 476 U.S. at 96-97). Although Justice Yates did not require the prosecution to provide race-neutral reasons for exercising any of its peremptory strikes against African-American prospective jurors, the record reflects that, prior to peremptorily challenging Coleman, the prosecution challenged him for cause, and provided a race-neutral reason for doing so. The prosecutor observed that Coleman "seemed to go off on a tangent, very confused, lost track of [the] question," when responding to one of Justice Yates' questions, and "that he might have a problem with following" and "seemed not to understand what [Justice Yates was] saying." (V. Tr. 308.) Justice Yates denied the for-cause challenge. He stated that, "I think I understand your concern," but that Coleman was an "elderly gentleman" and that "it was more a hearing problem than anything." (*Id*. 308-09.) This colloquy provides sufficient basis to find that the state courts did not unreasonably apply the law in determining that no prima facie case had been made with respect to the peremptory challenge of Coleman. The defense attorney suggested that the prosecutor's reasons were insincere and "not genuine," but the record is clear that Justice Yates determined with confidence that the prosecutor had legitimate, non-race-based reasons to strike Coleman from the jury. *See Batson*, 476 U.S. at 96-97 (stating that trial judge will draw on experience and "all relevant circumstances" in determining whether there is a prima facie case); *Alava v. Artuz*, No. 96-CV-8968, 1999 WL 1006178, at *5 (S.D.N.Y. Nov. 5, 1999) ("The Supreme Court in *Batson* specifically left it up to the sound discretion of the trial judge, who is experienced in supervising voir dire, to decide if the circumstances concerning the prosecution's use of peremptory

16

challenges creates a prima facie of discrimination against black jurors.").

Based on statistics alone, at least the second *Batson* challenge presents a close question as to whether a prima facie case was established. The Appellate Division did not unreasonably apply the law, however, in concluding that the totality of the circumstances reflected on the record did not give rise to an inference that the prosecution struck Bethune and Coleman on the basis of their race. *See* 28 U.S.C. § 2254(d)(1) (setting forth deferential habeas standard). As the Second Circuit has observed, "'an *unreasonable* application of federal law is different from an *incorrect* or *erroneous* application of federal law,'" *Overton*, 295 F.3d at 277 (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)) (emphasis in original)). "[T]he standard to be applied 'falls somewhere between merely erroneous and unreasonable to all reasonable jurists.'" *Id.* (quoting *Jones v. Stinson*, 229 F.3d 112, 119 (2d Cir. 2000)). Petitioner has not shown that the state courts unreasonably applied the *Batson* standard in concluding that no *prima facie* case had been made. *See Sorto*, 497 F.3d at 174 ("[I]t is one thing to conclude that a pattern of strikes is *prima facie* evidence of discrimination; it is a very different thing to hold that the contrary conclusion would be an unreasonable application of *Batson*."). Accordingly, the Court adopts Magistrate Judge Fox's recommendation that Petitioner's *Batson* claims should be dismissed.

## II. Conclusion

Having reviewed de novo the issues raised in Petitioner's Objections, the Court adopts the R&R to the extent it is not inconsistent with this Opinion and Order. For the reasons stated in this Opinion and Order and in the R&R, the Court finds that neither of Petitioner's claims warrants habeas relief. Nonetheless, because the Court recognizes that Petitioner's *Batson* claim presents a reasonably close question, the Court will grant Petitioner a certificate of appealability

as to that claim alone, finding that Petitioner has made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(1) & (2). Accordingly, it is hereby

ORDERED that the Petition is DISMISSED WITH PREJUDICE; and it is further

ORDERED that the Report and Recommendation dated December 17, 2004, is adopted to the extent it is not inconsistent with this Opinion and Order; and it is further

ORDERED that Petitioner is granted a Certificate of Appealability on his *Batson* claim only, pursuant to 28 U.S.C. § 2253(c)(1) & (2), because he has made a substantial showing of a denial of a constitutional right; and it is further

ORDERED that the Clerk of Court is respectfully directed to terminate the pending motion (Dkt. No. 17) and to close this case.

SO ORDERED.

Dated:    August 8, 2008
          White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

Service List

For Mailing by Clerk's Office:

Rahsaan Butler
98 A 5889
Otisville Correctional Facility
P.O. Box 8
Otisville, N.Y. 10963

Beth J. Thomas, Esq.
New York State Office of the Attorney General
120 Broadway
New York, N.Y. 10271


Copy To:
Honorable Kevin N. Fox
United States Magistrate Judge